# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

WENDY OSORIO MARTINEZ, et al.,

Petitioners-Appellants,

v.

ATTORNEY GENERAL UNITED STATES, et al.,

Respondents-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA No. 17-cv-1747-PD
The Hon. Paul S. Diamond

## RESPONDENTS-APPELLEES' RESPONSE BRIEF

CHAD A. READLER
Assistant Attorney
General,
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration
Litigation, District Court Section

EREZ REUVENI
Senior Litigation Counsel

JOSEPH A. DARROW
VINITA B. ANDRAPALLIYAL
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litig.-DCS
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044-0878
(202) 598-2445

*Counsel for Respondents-Appellees*

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ..............................................................................1

STATEMENT OF THE ISSUES ................................................ 2

LEGAL BACKGROUND .......................................................... 2

    A.    Judicial Review of Issues Arising From or Relating to the Implementation or Operation of an Order of Expedited Removal ..........3

    B.    Special Immigrant Juvenile ("SIJ") Classification and Adjustment of Status ..........................................................................................6

STATEMENT OF THE CASE ....................................................... 8

STANDARD OF REVIEW ............................................................17

SUMMARY OF THE ARGUMENT ..............................................17

ARGUMENT ..................................................................................18

I.    Appellants Lack a Likelihood of Success on the Merits With Any of Their Claims. ......................................................................18

    A.    Because the Court Lacks Jurisdiction to Review the Execution of a Final Order of Expedited Removal, and Because Such Execution Does not Violate the INA, Appellants' First Cause of Action is Unlikely to Succeed. ..........................................................................................19

        1.    The Court Lacks Jurisdiction Over Challenges to Individual Expedited Removal Orders Falling Outside the Scope of Section 1252(e)(2) Challenges ..........................................................................19

        2.    Count I is Based on a Legally Flawed Premise Regarding the Effect of SIJ Classification. ...............................................................24

    B.    Appellants' Procedural Due Process Claim Fails ........................................31

i

  C. Appellants Point to No Actual New Administrative Rule or Revocation And Cannot Sustain Their APA Violation Claim ..................................34

**II. Appellants Fail to Demonstrate Irreparable Harm .................................. 40**

**III. The Public and Governmental Interests Weigh Against Injunctive Relief .................................................................................................. 43**

**CONCLUSION ...................................................................................... 45**

**CERTIFICATE OF COMPLIANCE .................................................... 47**

**CERTIFICATE OF MEMBERSHIP ..................................................... 47**

**CERTIFICATE CONCERNING PAPER COPIES ...................................... 47**

**CERTIFICATE OF SERVICE ......................................................... 47**

# TABLE OF AUTHORITIES

## CASE LAW

*AILA v. Reno*
18 F. Supp. 2d 38, 60 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) ......... 5, 20

*Acierno v. New Castle Cty.*,
40 F.3d 645 (3d Cir. 1994) ...................................................................................42

*Aguilar v. US ICE*,
510 F.3d 1 (1st Cir. 2007) ...................................................................................19

*Anderson v. Davila*,
125 F.3d 148 (3d Cir. 1997) .......................................................................... 41, 42

*Barrera-Echavarria v. Rison*,
44 F.3d 1441 (9th Cir. 1995) ...............................................................................34

*Bimbo Bakeries USA, Inc. v. Botticella*,
613 F.3d 102 (3d Cir. 2010) ................................................................................17

*Boutilier v. INS*,
387 U.S. 118 (1967) ..............................................................................................3

*Castro v. U.S. Dep't of Homeland Sec.*,
835 F.3d 422 (3d Cir. 2016) ...........................................................1, 2, 10, 18

*Castro v. U.S. Dep't of Homeland Sec.*,
163 F. Supp. 3d 158 aff'd sub nom. Castro v. United States Dep't of Homeland
Sec., 835 F.3d 422 (3d Cir. 2016), cert. denied sub nom. Castro v. Dep't of
Homeland Sec., 137 S. Ct. 1581, 197 L. Ed. 2d 705 (2017)............................10, 11, 13

*Chacku v. U.S. Atty. Gen.*,
555 F.3d 1281 (11th Cir. 2008)............................................................................29

*Chehazeh v. Attorney Gen. of U.S.*,
666 F.3d 118 (3d Cir. 2012) ................................................................................38

iii

*Clark v. Martinez,*
543 U.S. 371 (2005) ................................................................22

*E. Adhesives, Inc. v. Scapa N. Am., Inc.,*
305 F. App'x 33 (3d Cir. 2008) ...............................................31

*ECRI v. McGraw–Hill,* Inc.,
809 F.2d 223 (3d Cir. 1987) ....................................................43

*Fiallo v. Bell,*
430 U.S. 787 (1977) ..................................................................3

*Freeman v. Pittsburgh Glass Works, LLC,*
709 F.3d 240 (3d Cir. 2013) ....................................................19

*Gao v. Jenifer,*
185 F.3d 548 (6th Cir. 1999) .....................................................8

*Garcia v. Holder,*
659 F.3d 1261 (9th Cir. 2011) ...........................................25, 27

*Gisbert v. Attorney General,*
988 F.2d 1437 (5th Cir. 1993) .................................................34

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.,*
864 F. Supp. 2d 316 (E.D. Pa. 2012) .......................................43

*H.S.P. v. J.K.,*
121 A.3d 849 (N.J. 2015) ..........................................................7

*Harisiades v. Shaughnessy,*
342 U.S. 580 (1952) ..................................................................3

*In re Luis Perez,*
2013 WL 5872160 (DCBABR Oct. 3, 2013) ......................27, 36

*Kabenga v. Holder,*
76 F. Supp. 3d 480 (S.D.N.Y. 2015) ..................................21, 22

*Kleindienst v. Mandel,*
408 U.S. 753 (1972) ...............................................................2, 3

iv

*Landon v. Plasencia,*
  459 U.S. 21 (1982) ...................................................................32

*Lincoln v. Vigil,*
  508 U.S. 182 (1993) ............................................................ 37, 38

*Luevano v. Holder,*
  660 F.3d 1207 (10th Cir. 2011) ...............................................28

*M.B. v. Quarantillo,*
  301 F.3d 109 (3d Cir. 2002) ............................................... 30, 36

*Malik v. Attorney Gen. of U.S.,*
  659 F.3d 253 (3d Cir. 2011) .....................................................24

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) .............................................................. 39, 40

*Mudric v. Att'y Gen.,*
  469 F.3d 94 (3d Cir. 2006) ................................................... 29, 30

*Ngongo v. Ashcroft,*
  397 F.3d 821 (9th Cir. 2005) ....................................................29

*Nken v. Holder,*
  556 U.S. 418 (2009) ..................................................................43

*Pennsylvania Dep't of Pub. Welfare v. United States Dep't of Health and Human Servs.,*
  101 F.3d 939 (3d Cir. 1996) .....................................................39

*Recinos v. Escobar,*
  46 N.E.3d 60 (Mass. 2016).........................................................7

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3d Cir. 2017) .....................................................17

*Reno v. Arab-Am. Anti-discrimination Comm.,*
  525 U.S. 471 (1999) ..................................................................44

*Sampson v. Murray,*
    415 U.S. 61 (1974) .................................................................43

*SBC Inc. v. Fed. Commc'ns Comm'n,*
    414 F.3d 486 (3d Cir. 2005) .............................................38

*Scialabba v. Cuellar de Osorio,*
    134 S. Ct. 2191 (2014) ........................................................42

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953) .............................................................32

*Singh v. Attorney Gen. of U.S.,*
    399 F. App'x 769 (3d Cir. 2010) .....................................28

*Smith v. U.S. Customs & Border Prot.,*
    741 F.3d 1016 (9th Cir. 2014) ..........................................21

*United States ex rel. Knauff v. Shaughnessy,*
    338 U.S. 537 (1950) ...............................................................2

*United States v. Elrawy,*
    448 F.3d 309 (5th Cir. 2006) ...........................................29

*United States v. Ochoa-Colchado,*
    521 F.3d 1292 (10th Cir. 2010) .......................................29

*Vasquez de Alcantar v. Holder,*
    645 F.3d 1097 (9th Cir. 2011) ..........................................29

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................42

*Zhao Xin Zhu v. Attorney Gen. of U.S.,*
    293 F. App'x 184 (3d Cir. 2008) .......................................8

## FEDERAL STATUTES

5 U.S.C. § 704 ............................................................................38

8 U.S.C. § 1101(a)(27)(J) ..................................................... *passim*

8 U.S.C. § 1101(b)(1) ............................................................ 6

8 U.S.C. § 1151 ............................................................... 7, 26

8 U.S.C. § 1151(a)(2) ........................................................... 26

8 U.S.C. § 1152 .................................................................. 26

8 U.S.C. § 1153(b)(4) ........................................................... 26

8 U.S.C. § 1182(d)(5) ....................................................... 13, 33

8 U.S.C. § 1201 ................................................................. 37

8 U.S.C. § 1204 ................................................................. 37

8 U.S.C. § 1225(b)(1) ...................................................... *passim*

8 U.S.C. § 1229a ............................................................ *passim*

8 U.S.C. § 1229b ............................................................ 27, 28

8 U.S.C. § 1229b(a)(2) ......................................................... 27

8 U.S.C. § 1252 ............................................................... 2, 3

8 U.S.C. § 1252(a) .............................................................. 23

8 U.S.C. § 1252(a)(2)(A) ................................................... 11, 35

8 U.S.C. § 1252(a)(2)(A)(i) ........................................... 1, 4, 18, 19

8 U.S.C. § 1252(a)(2)(A)(i–iv) ................................................. 23

8 U.S.C. § 1252(a)(2)(B)(i) .................................................... 40

8 U.S.C. § 1252(a)(2)(B)(ii) ................................................... 16

8 U.S.C. § 1252(e) ............................................................*1, 4, 16, 18*

8 U.S.C. § 1252(e)(1) ...................................................................12

8 U.S.C. § 1252(e)(1)-(5) ..............................................................23

8 U.S.C. § 1252(e)(2) ................................................... 4, 12, 19, 27

8 U.S.C. § 1252(e)(2)(B) .............................................1, 2, 20, 30

8 U.S.C. § 1252(e)(2)(C) ...........................................................22,

8 U.S.C. § 1252(e)(3) .................................................................12,

8 U.S.C. § 1252(e)(3)(A)–(B) .............................................. 5, 20

8 U.S.C. § 1252(e)(4) ..................................................................22

8 U.S.C. § 1252(e)(4)(A) ............................................................44

8 U.S.C. § 1252(e)(4)(A)-(B) ......................................................23

8 U.S.C. § 1252(e)(5) .......................................................2, 21, 30

8 U.S.C. § 1252(e)(5) ........................................................*passim*

8 U.S.C. § 1255 ...................................................................24, 25

8 U.S.C. § 1255(a) ............................................................*passim*

8 U.S.C. § 1255(h) ............................................................*passim*

8 U.S.C. § 1255(h)(1) ...................................................................7

8 U.S.C. § 1255(h)(2) .................................................................25

8 U.S.C. § 1331 ............................................................................1

28 U.S.C. § 1292(a)(1) ................................................................1

# FEDERAL REGULATONS

8 C.F.R. § 205.1 ..................................................................................39

8 C.F.R. § 235.3(b)(2)(iii) ...................................................................13

8 C.F.R. § 235.3(b)(4)(ii) ....................................................................13

8 C.F.R. § 245.1(a) ................................................................................8

8 C.F.R. § 245.1(g)(1) ...............................................................9, 16, 26

8 C.F.R. § 245.1(g)(2) ..........................................................................26

22 C.F.R. § 42.32(d)(6) ........................................................................37

# FEDERAL REGISTER

58 Fed. Reg. 42843–01 ...............................................................8, 37, 42

58 Fed. Reg. 482844................................................................... 37, 42

58 Fed. Reg. 482849.............................................................................8

# LEGISLATIVE HISTORY

H.R. Rep. No. 104-469 .........................................................................43

# MISCELLANEOUS

Dep't of State, Visa Bulletin for July 2017,
    https://travel.state.gov/content/visas/en/law-and-policy/bulletin/2017/visa-
    bulletin-for-july-2017.html (last accessed July 14, 2017) .............................................26

"Next Steps—Fees and Application," U.S. Dep't of State Bureau of Consular Affairs,
    https://travel.state.gov/content/visas/en/immigrate/employment.html#fourth
    (last visited May 23, 2017); ..............................................................................37

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellants' assertion of subject matter jurisdiction is incomplete and incorrect. This appeal does include claims arising under the Constitution and laws of the United States under 28 U.S.C. § 1331, and the denial of preliminary injunctive relief may be appealed on an interlocutory basis under 28 U.S.C. § 1292(a)(1). However, the Immigration and Nationality Act ("INA") expressly prohibits a federal court from "entertain[ing] any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title," except as provided for at 8 U.S.C. § 1252(e). 8 U.S.C. § 1252(a)(2)(A)(i). Appellants' challenge clearly arises from and relates to such orders and thus falls within the scope of this jurisdictional bar.

Appellants argue that the Court may assert jurisdiction to review their claims pursuant to 8 U.S.C. § 1252(e)(2)(B), which provides for limited habeas review of whether an alien "was ordered removed under" section 1225(b)(1). However, this Court has explained that review under section 1252(e)(2)(B) "should only be for whether an immigration officer issued that piece of paper and whether the Petitioner is the same person referred to in that order." *Castro v. Dep't of Homeland Sec.*, 835 F.3d 422, 431 (3d Cir. 2016), *cert. denied sub nom. Castro v. Dep't of Homeland Sec.*, No. 16-812, 2017 WL 1366739 (U.S. Apr. 17, 2017). That such orders naming Appellants were issued here is undisputed and, indeed, a necessary precondition for Appellants'

argument that SIJ classification should override such orders. Jurisdiction over such arguments is further lacking because, under section 1252(e)(2)(B), "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal," which is what Appellants assert their SIJ classification entitles them to. *See* 8 U.S.C. § 1252(e)(5). Appellants advance purely frivolous arguments under which their claims conceivably fall within section 1252(e)(2)(B). Thus, jurisdiction is lacking.

## STATEMENT OF THE ISSUES

Whether the District Court correctly denied a preliminary injunction where Appellants sought to override the clear jurisdiction stripping provisions of 8 U.S.C. § 1252 and the Third Circuit's binding precedent in *Castro v. Dep't of Homeland Sec.*, 835 F.3d 422 (3d Cir. 2016), *cert. denied sub nom. Castro v. Dep't of Homeland Sec.*, No. 16-812, 2017 WL 1366739 (U.S. Apr. 17, 2017), by seeking review of final orders of expedited removal and relief from removal on the basis of the minor Appellants' classification as Special Immigrant Juveniles ("SIJ").

## LEGAL BACKGROUND

The Supreme Court has long recognized that the power to admit or exclude aliens is a sovereign prerogative vested exclusively in the political branches, and that "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765–766 & n.6 (1972) ("the Court's general reaffirmations of this principle have been legion"). Control of the Nation's

borders is vested in the political branches because that authority is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," matters "exclusively entrusted to the political branches of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–589 (1952); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (stating that the Executive's inherent power to administer the immigration laws is a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control").

Accordingly, the Supreme Court "without exception has sustained Congress's 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Kleindienst*, 408 U.S. at 766 (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

## A. Judicial Review of Issues Arising From or Relating to the Implementation or Operation of an Order of Expedited Removal

The legal and historical background of the expedited removal regime and Appellants procedural history is outlined by this Court in *Castro*, *see* 835 F.3d at 425-28, and the District Court's decision. As relevant here, 8 U.S.C. § 1252 unambiguously provides that federal courts lack jurisdiction, in habeas, or otherwise, including under the Administrative Procedure Act ("APA") or in mandamus, to review not only "individual determination[s]" concerning expedited removal or credible fear claims made during expedited removal proceedings, but "to entertain *any* other cause or claim *arising from* or *relating to* the *implementation* or *operation* of an order of removal

3

pursuant to section 1225(b)(1) of this title," 8 U.S.C. § 1252(a)(2)(A)(i) (emphasis added), except as provided for at 8 U.S.C. § 1252(e); *see Castro*, 835 F.3d at 432.

Subsection 1252(e) permits review of determinations under section 1225(b)(1) to three discrete issues: "(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence" or has been admitted as a refugee or been granted asylum, such status not having been terminated. 8 U.S.C. § 1252(e)(2). Review "shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of *whether the alien is actually inadmissible or entitled to any relief from removal*." *Id.* at § 1252(e)(5) (emphasis added). Moreover, "[w]ithout regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may" "certify a class [action]" relating to implementation or operation of an expedited removal order or "enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)," beyond an order vacating the expedited removal order and placing the alien in removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. §§ 1252(e)(1), (4).

Subsection 1252(e) also contemplates generalized challenges to the legality or constitutionality of section 1225(b), or regulations implementing section 1225(b). 8 U.S.C. § 1252(e)(3)(A)–(B). However, any such generalized challenges had to be

brought in the District of Columbia within 60 days of implementation of the challenged law. *Castro*, 835 F.3d at 427 (citing 8 U.S.C. § 1252(e)(3)(A)–(B)). Additionally, the expedited removal scheme has been upheld against such a facial challenge to its constitutionality. *See AILA v. Reno*, 18 F. Supp. 2d 38, 60 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000).

Every circuit court to explicitly address the issue, including most recently the Third Circuit, in a case the Supreme Court declined to reverse, has held that these limited review provisions do not violate the Constitution or the INA, such that the inability of aliens like Appellants to challenge any aspect of their expedited removal orders or to enjoin operation of those orders is constitutionally sound. *See Castro*, 835 F.3d at 450 (collecting cases).

Indeed, in upholding these provisions, this Court held that "§ 1252 makes abundantly clear that if jurisdiction exists to review any claim *related to* an expedited removal order, it exists *only under subsection (e)* of the statute." *Castro*, 835 F.3d at 432 (emphasis added). That is because "Congress may, consonant with the Constitution, deny habeas review in federal court of claims relating to an alien's application for admission to the country, at least as to aliens who have been denied initial entry or who, like [Appellants], were apprehended very near the border and, essentially, immediately after surreptitious entry into the country." *Id.* And because Appellants' efforts to stay execution of their orders of removal "stem from the Executive's decision to remove them from the country, they cannot invoke the Constitution, including the

Suspension Clause, in an effort to force judicial review beyond what Congress has already granted them." *Id.* at 446.

## B. Special Immigrant Juvenile ("SIJ") Classification and Adjustment of Classification

Classification as a "Special Immigrant Juveniles" ("SIJ") does not itself alter Appellants' legal status but instead allows aliens to apply to adjust their status to that of lawful permanent resident ("LPR") if they satisfy a number of criteria. *See* 8 U.S.C. §§ 1255(a), (h). To be classified as an SIJ, an alien child must be: physically present in the United States, unmarried, under age 21 on the date of filing the SIJ petition, and be the subject of state juvenile court order(s) issued in the United States that make specific findings. *See* 8 U.S.C. §§ 1101(a)(27)(J), (b)(1). The state juvenile court must have issued one or more orders together finding:

(1) the child is one who "has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States";

(2) his or her "reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and

(3) "it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence[.]"

8 U.S.C. § 1101(a)(27)(J)(i)–(ii).

The "State and Federal [immigration] proceedings are distinct from each

other." *Recinos v. Escobar*, 46 N.E.3d 60, 64 (Mass. 2016) (quoting *H.S.P. v. J.K.*, 121 A.3d 849, 857 (N.J. 2015)). "[T]he findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states. All immigration decisions remain in the hands of USCIS, the agency charged with administering the INA." *H.S.P.*, 121 A.3d at 859.

At the discretion of the Secretary of Homeland Security, an alien who was "inspected and admitted or paroled" into the United States is eligible for adjustment of status if: (1) the alien files an application, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255(a). Once a juvenile obtains SIJ classification through a successful petition, she may file an application for adjustment of status to that of an LPR. An alien who lives abroad may apply for LPR status through consular processing with the Department of State, and if approved will be issued an immigrant visa and be admitted to the United States as an LPR. *See* 8 U.S.C. § 1151.

Aliens classified as SIJs, even where they may have entered the United States without inspection, are, for the limited purpose of adjudicating the application to adjust status, "deemed, for purposes of [§ 1255(a)], to have been paroled into the United States." *Id.* § 1255(h)(1). This provision was added by the Miscellaneous and Technical Immigration and Nationality Amendments of 1991 ("Technical Amendments"). Section 302(d)(2) of the Technical Amendments provides that, for

the purpose of applying for adjustment of status as a special immigrant juvenile under 8 U.S.C. § 1101(a)(27)(J) only, these juveniles will be treated as if they had been paroled into the United States. 58 Fed. Reg. 42843–01, 482849, 8 C.F.R. § 245.1(a), (e)(3). However, "[n]othing in [section 1255(h)] or 8 U.S.C. § 1101(a)(27)(J) of [8 U.S.C.] shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant classification described in such section." 8 U.S.C. § 1255(h).

"Granting [the alien] SIJ [classification] does not, in itself, restrain or compel the government with respect to deportation. It merely makes him eligible for permanent resident classification . . . ." *Gao v. Jenifer*, 185 F.3d 548, 554–55 (6th Cir. 1999). Crucially, however, an alien with SIJ classification, like any alien seeking to adjust classification or immigrate to the United States, may only have their application approved once a visa is actually available to him or her. "An alien is ineligible for the benefits of [adjustment of status, provided in 8 U.S.C. § 1255] unless an immigrant visa is available for processing – i.e., the visa numbers are current for the applicant's category. 8 C.F.R. § 245.1(g)(1); *accord Zhu v. Att'y Gen. of U.S.*, 293 F. App'x 184, 186 (3d Cir. 2008). Thus, the adjudication of an application to adjust status filed by an alien classified as an SIJ is not completed unless and until an immigrant visa is available. See 8 U.S.C. § 1255(a)(3), 8 C.F.R. § 245.2(a)(2)(i)(A), 8 C.F.R. § 245.1(g)(1) and 8 C.F.R. § 103.2(b)(1).

## STATEMENT OF THE CASE

Appellants are four mothers appearing on behalf of themselves and their minor children who (1) were apprehended by DHS shortly after unlawfully and surreptitiously crossing the border, *see* Dist. Ct. dkt. ECF 1, at ¶¶ 46, 47, 70, 71, 93, 94, 116, 117; (2) are subject to final orders of expedited removal and mandatory detention, *see* 8 U.S.C. § 1225(b)(1); (3) are mandatorily detained by statute at the Berks Family Residential Center, *see* Complaint, ECF 1, at ¶¶ 11–14; 8 U.S.C. § 1225(b)(1); and (4) have minor children in their custody who have been classified as Special Immigrant Juveniles ("SIJ") under 8 U.S.C. § 1101(a)(27)(J) during the period in which their final orders of removal were stayed pending review. *See* ECF 1, at ¶¶ 11–14. Contrary to their statements in their Complaint, *see* ECF 1, at ¶¶ 11–14, none of the minor children named in the Complaint have received any immigrant visas through their approved Form I-360, or SIJ, petitions.[1]

---

[1] Plaintiff D.S. R-O-, a native and citizen of El Salvador, applied for SIJ on or around August 24, 2016 and the petition was approved on or about October 3, 2016. A-209, Decl. of Peter Rosenstock ¶ 4; A-20, A-31, Compl. ¶¶ 11, 54, 55. Plaintiff A.D. M-L-, a native and citizen of Honduras, applied for SIJ on or around October 25, 2016, and the petition was approved on or around November 28, 2016. A-209, Rosenstock Decl. ¶ 5; A-21, A-36, Compl. ¶¶ 12, 80, 81. Plaintiff J.E. L-M-, a native and citizen of El Salvador, applied for SIJ on or around May 27, 2016, and the petition was approved on or around August 8, 2016. A-210, Rosenstock Decl. ¶ 6; A-21, A-39, Compl. ¶¶ 13, 101, 102. Plaintiff V.G. R-A-, a native and citizen of El Salvador, applied for SIJ on or around August 24, 2016, and the petition was approved on October 13, 2016. A-210, Rosenstock Decl. ¶ 7; A-21, A-43, Compl. ¶¶ 14, 124. However, while Appellants were permitted to file a Form I-485 application to adjust status during October, November, and December 2016, visas were not and are not immediately available for Appellants, A-211, Rosenstock Decl. ¶ 14, which is a requirement to be eligible for adjustment of status. 8 C.F.R. § 245.1(g)(1); *see also infra.*

Appellants are four of the 29 family units recently before this Court in *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422 (3d Cir. 2016), as well as two similarly situated families added to the *Castro* litigation.[2] ECF 27 at ¶ 28; ECF 28 at ¶ 3. The history of their administrative proceedings is described in *Castro*, 835 F.3d at 427-30; 163 F. Supp. 3d at 158–60. Notably, between August 2015 and December 2015, Appellants illegally crossed the southern border and were apprehended by immigration authorities within no more than four miles of the border and within six hours or less after crossing. *Id.* at 159; 835 F.3d at 427; *see generally J.A.A.-S. v. Johnson*, No. 16-6391 (E.D. Pa.), ECF 29-1, 29-2, 29-3.[3] They were (1) found to lack valid entry documents, (2) determined to be inadmissible, and (3) issued expedited removal

---

As a result, Appellants' adjustment applications cannot be adjudicated. *See* A-210, Rosenstock Decl. ¶¶ 8–11.

[2]   Additional petitioners, including the instant Appellants, were added to the *Castro* litigation after the District Court entered its order dismissing their petitions for lack of jurisdiction, but which the Third Circuit incorporated into its consideration of appeal from the dismissal order. *See Castro*, 835 F.3d at 427 n.6.

[3]   Specifically, Jethzabel Maritza Aguilar-Mancia and V.G.R.A., 17-680, were apprehended about .25 miles east of the border on October 15, 2015. J.A.A.S., ECF 29-1, 29-2 at 1–2. Carmen Aleyda Lobo-Mejia and A.D.M.L., 17-678, were apprehended on October 23, 2015, about 30 minutes after crossing and .06 miles north of the border. *Id.* at 30–31. Maria Delmi Martinez-Nolasco and J.E.L.M., 17-704, were apprehended on September 15, 2015, about 15 minutes after crossing and .19 miles east of the border. *Id.* at 33–34. Wendy Amparo Osorio Martinez and D.S.R.O., 17-679, were apprehended on October 21, 2015, approximately 30 minutes after crossing and 0.3 miles east of the border. *Id.* at 36–37.

orders. 835 F.3d at 427–28. Appellants expressed a fear of return to their native countries and were interviewed by USCIS asylum officers, who determined that Appellants lacked a credible fear of persecution or torture in El Salvador or Honduras, respectively; the asylum officers' supervisors concurred in those determinations. *Id.* at 428. Appellants requested and received review of those determinations by an IJ. *Id.* In *de novo* review, the IJs concurred with the asylum officers' negative credible fear determinations, at which time the expedited removal orders became final, and returned the cases to DHS for execution of the expedited removal orders. *Id.*

Appellants filed habeas petitions and requests for stays of removal with the Eastern District of Pennsylvania, challenging their expedited removal orders, their negative credible fear findings, and the process they received during their proceedings on constitutional, statutory, and regulatory grounds. *Castro*, 163 F. Supp. 3d at 157–59. The District Court entered a stay of removal pending further review and the petitions were consolidated with other habeas petitions brought by families in similar circumstances for purposes of determining the court's jurisdiction. *Id.* at 159. On February 16, 2016, the District Court entered an opinion and order holding that the INA barred federal judicial review of Appellants' challenges to their expedited removal orders and negative credible fear determinations and that this limitation on review was constitutional. *Id.* at 168.

On February 17, 2016, Appellants appealed to the Third Circuit, and a stay

pendent lite was entered. On August 29, 2016, a unanimous panel of the Third Circuit issued an opinion and order affirming the district court. The Third Circuit held that the INA unambiguously precluded review of Appellants' challenges to their expedited removal orders and credible fear proceedings. 835 F.3d at 433–34. As to their constitutional argument, the court held that "Congress may, consonant with the Constitution," limit "habeas review in federal court of claims relating to an alien's application for admission to the country, at least as to aliens who have been denied initial entry or who, like Appellants, were apprehended very near the border and, essentially, immediately after surreptitious entry into the country." *Id.* at 434–35. Such aliens, the Court held, are properly deemed "alien[s] seeking initial admission to the United States," and therefore have "no constitutional rights regarding [their] application[s]" for admission. *Id.* at 445. "Since the issues that Petitioners seek to challenge all stem from the Executive's decision to remove them from the country," following denial of their admission and issuance of a final order of expedited removal, "they cannot invoke the Constitution, including the Suspension Clause, in an effort to force judicial review beyond what Congress has already granted them," *id.* at 445–46, *i.e.*, the limited review found at 8 U.S.C. §§ 1252(e)(2) and (3) and discussed *supra*.

On October 28, 2016, the Third Circuit denied Appellants' request for panel and *en banc* rehearing. *Castro*, 16-1339 (3d Cir. Oct. 28, 2016). On November 23, 2016, although it noted that it "believes that current precedent dictated" its affirmance of this Court's judgment, the panel stayed issuance of its mandate in light of Appellants'

representation that they would seek certiorari review by the U.S. Supreme Court. *Id.* (Nov. 23, 2016 Order). On December 27, 2016, Appellants filed a petition for a writ of certiorari, Case 16-812.[4]

On December 12, 2016, Appellants Patricia Celina Soriano Bran and J.A.A.-S. filed an emergency habeas petition challenging their detention at Berks under the Due Process Clause of the Fifth Amendment and the INA. ECF 1. On January 5, 2017, the case was determined to be related to *Castro*, 163 F. Supp. 3d at 157, and reassigned accordingly. *J.A.A.-S.*, ECF 9. On February 15 and 17, 2017, the Court consolidated it with 12 other habeas petitions filed by detainees at Berks involved in the *Castro* litigation for purposes of determining the Court's subject matter jurisdiction. ECF Nos. 24, 25. The petitioners in that case—including each named Appellant here— raise three claims for relief. First, they argue that their ongoing detention pending execution of their expedited removal orders violates their due process rights. *J.A.A.S.*, ECF 27 at 12–13, ECF 28 at ¶ 5. Second, they argue that DHS's decision not to

---

[4]    While *Castro* was pending on appeal, Appellants requested that DHS release them pursuant to its parole authority under 8 U.S.C. § 1182(d)(5). *J.A.A.-S.*, ECF 29-3 at ¶ 10. ICE denied the requests on the grounds that it has limited discretion to release an alien subject to an order of expedited removal through its parole authority—only when parole is "required to meet a medical emergency or is necessary for a legitimate law enforcement objective," 8 C.F.R. §§ 235.3(b)(2)(iii), 235.3(b)(4)(ii))—and Appellants have thus far failed to fall within that narrow exception." Thereafter, although not required by statute or regulation, ICE conducted periodic reviews of Appellantss' circumstances to ascertain whether those circumstances had changed in such a way to warrant release through parole. *See* ECF 1 at ¶ 33; *J.A.A.-S.*, ECF 29-3 at 9.

release them from custody violates the INA. *Id.*, ECF 27 at 14–15, ECF 28 at ¶¶ 4–5. Third, they allege that four of the children in their number have received SIJ classification from USCIS, and should be released from custody on that basis. *Id.*, ECF 28 at ¶¶ 6–7; *see also* Notice of Related Cases, ECF 5.

On April 17, 2017, the Supreme Court denied Appellants' petition for a writ of certiorari. Denial of Writ of Certiorari, *Castro v. Dep't of Homeland Sec.*, No. 16-812 (U.S.). The next day, Appellants filed the instant lawsuit and motion for a temporary restraining order. A-18–52, A-53–158. Appellants allege eight claims for relief, all of which flow from their desire to enjoin operation of their final orders of expedited removal: (1) Defendants' execution of expedited removal orders issued to SIJ beneficiaries would violate the INA; (2) Defendants' implementation of the SIJ provisions of the INA "are motivated by animus and desire to harm a particular group" in violation of the Equal Protection Clause of the U.S. Constitution; (3) "Defendants['] removal of Appellants and those similarly situated would violate the procedural due process guarantees of the Fifth Amendment"; (4) Defendants' implementation of the INA's SIJ provisions "discriminate on the basis of race, nationality, place of birth, and/or place of residence in the issuance of visas, in violation of the" INA; (5) Defendants' implementation of the INA's SIJ provisions "would violate the Convention Against Torture in that Defendants have already determined that it would not be in Appellants['] best interest to be returned to the country of their prior residence"; (6) Defendants "did not follow the procedures

required by the Administrative Procedure Act before taking action impacting [Appellants'] substantive rights" in their application of their policies, practices, and regulations regarding SIJ"; (7) Defendants' implementation of SIJ "constitute[s] unconstitutional and unlawful action . . . in violation of the APA"; and (8) in what is styled as a *Bivens* claim for false imprisonment, Defendants "violated Appellants' constitutionally protected right under the Fifth Amendment to be free of unreasonable and/or illegal detention." A-45–51.

On April 19, 2017, the District Court granted a temporary restraining order ("TRO") based largely on the Court's (mistaken) view that Appellants would suffer irreparable harm if removed because they would lose any ability to procure an immigrant visa premised on their SIJ classification, and ordered Appellees to show cause why a preliminary injunction should not issue. A-159–161. Appellants advanced only two specific arguments in their motion for a TRO: (1) that they were entitled to relief under an expired and unrelated settlement agreement,[5] and (2) that under 8 U.S.C. § 1255(h), they are no longer subject to expedited removal and could not be removed from the United States. A-59–75.

On May 23, 2017, after the case was re-assigned to Judge Diamond, the District Court denied Appellants' request for a preliminary injunction and dissolved the TRO

---

[5] As Appellants acknowledge, Appellants' Br. at 2-3, they are simultaneously attempting to litigate the effect of their SIJ status on their removal orders through a motion to enforce the now-expired settlement agreement in *Perez-Olano v. Sessions*, No. CV 05-3604 DDP (C.D. Cal.).

preventing their removal. May 23, 2017 Dist. Ct. Order, Doc. 003112632799. The court held that Appellants' claims amount to a attempt to re-litigate their expedited removal orders. *Id.* at 13. "This Court and the Third Circuit ruled that the federal courts are without jurisdiction to hear their claims, and that this jurisdictional bar is constitutional." *Id.* Accordingly, the court reasoned, Appellants may not seek to stay the execution of their removal orders under section 1252(e). *Id.* at 8. Moreover, the court observed, consistent with cases cited by the Government, that SIJ classification "does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for . . . adjustment of status." *Id.* at 9.

Even so, the court reviewed the claim that is the crux of Appellants' pending motion on appeal – that because Appellants have SIJ classification, they are no longer removable from the United States under section 1255(h) because they have effectively been "paroled" into the United States. *Id.* at 10. The court concluded that "[t]his distortion of the law is based on Appellants' decision to ignore the INA's distinction between being 'paroled' and being 'deemed paroled': the latter is a legal fiction created only to allow DHS to determine whether an alien is eligible for an immigrant visa under § 1255(a)." *Id.* Moreover, the court reasoned, "§ 1255(h)(2) could apply to a Minor Plaintiff only after a visa is made available to her." *Id.* (citing 8 C.F.R. § 245.1(g)(1)). As a likelihood of success was essential to obtaining relief, the court held that it was thus compelled to deny an injunction "[b]ecause there is thus no chance

that Appellants will succeed on the merits of their noncognizable claims . . . ."[6] *Id.*

On appeal, Appellants waive any reliance on the settlement agreement they cited in district court and instead focus exclusively on their argument that section 1255(h) provides them legal status in the United States, thereby precluding execution of their expedited removal orders. *See* Appellants' Br. at 2-3.

## STANDARD OF REVIEW

"When reviewing a district court's [denial] of a preliminary injunction, we review the court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision . . . for an abuse of discretion." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

The Third Circuit recently clarified its preliminary injunction standard:

> A movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

## SUMMARY OF THE ARGUMENT

---

[6] Despite noting the lack of merit to Appellants' claims, the District Court stayed its order to permit Appellants' time to appeal. A-343. Appellants filed an emergency appeal to this Court and requested a stay of removal. On June 9, 2017, the Court granted Appellants' stay motion and expedited the merits briefing. June 9, 2017 Order.

Appellees request this Court to affirm the District Court's decision on Appellants' motion for a preliminary injunction and deny Appellants' appeal. Appellants, who are subject to final orders of expedited removal, impermissibly seek to re-litigate issues already decided by the Third Circuit in *Castro v. Dep't of Homeland Sec.*, 835 F.3d 422 (3d Cir. 2016), *cert. denied sub nom. Castro v. Dep't of Homeland Sec.*, No. 16-812, 2017 WL 1366739 (U.S. Apr. 17, 2017), and further fail to establish any of the elements necessary to support a preliminary injunction. Specifically, under 8 U.S.C. § 1252(a)(2)(A)(i), this Court lacks jurisdiction over any challenges arising out of or relating to the implementation or operation of a final order of expedited removal not set forth in 8 U.S.C. § 1252(e), and Appellants do not properly assert any claims permitted under that section.

Moreover, Appellants fail to properly plead any claims that do not ostensibly arise out of or relate to their expedited removal orders. Finally, Appellants fail to make a clear showing of a properly asserted, irreparable harm that would accrue in the absence of the requested relief. The Court should therefore decline to issue a preliminary injunction and lift its temporary restraining order.

## ARGUMENT

### I.  Appellants Lack a Likelihood of Success on the Merits With Any of Their Claims.

Appellants appear to have only moved for a preliminary injunction on the basis of one of their eight causes of action, thereby waiving any basis for a preliminary

injunction on the other seven claims by failing to establish a likelihood of success on the merits of *each* claim. Further, on appeal, Appellants appear to limit their arguments on the merits to their erroneous interpretation of 8 U.S.C. §§ 1252 and 1255(h) and their due process and APA claims. Accordingly, Appellees limit their response to those issues and consider any other claims or arguments raised below to be waived. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 250 (3d Cir. 2013).

A. **Because the Court Lacks Jurisdiction to Review the Execution of a Final Order of Expedited Removal, and Because Such Execution Does not Violate the INA, Appellants' First Cause of Action is Unlikely to Succeed.**

1. *The Court Lacks Jurisdiction Over Challenges to Individual Expedited Removal Orders Falling Outside the Scope of Section 1252(e)(2) Challenges.*

As a threshold matter, the Court lacks jurisdiction over all of Appellants' claims because they impermissibly attempt to seek review and enjoin the implementation and operation of final orders of expedited removal. The INA unequivocally dictates that, subject to limited habeas review at section 1252(e), federal courts lack jurisdiction over any cause or claim "arising from or relating to the implementation or operation of an order of" expedited removal. 8 U.S.C. § 1252(a)(2)(A)(i). Appellants' claims challenging the implementation or operation of their final orders of expedited removal in light of their minor children's SIJ classification and asserted due process considerations both arise out of and are related to their expedited removal orders. *See, e.g., Aguilar v. US ICE*, 510 F.3d 1, 10 (1st Cir. 2007) (explaining that under the INA,

the term "relating to" is far broader than "arising from" and "sweep[s] within its scope claims with [even] only a remote or attenuated connection to the [underlying] removal of an alien").

As this Court has explained, "§ 1252 makes abundantly clear that if jurisdiction exists to review _any_ claim related to an expedited removal order, _it exists only under subsection (e) of the statute_," 835 F.3d at 432 (emphasis added). Section 1252(e), as noted, authorizes a very limited set of claims: "(A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence" or has been admitted as a refugee or been granted asylum, such status not having been terminated. 8 U.S.C. § 1252(e)(2).[7]

Appellants do not purport to be citizens, lawful permanent residents, asylees or refugees; however, they argue under section 1252(e)(2)(B) that "minor Plaintiffs are not 'ordered removed,' because they are deemed paroled into the United States under 8 U.S.C. § 1255(h) and the grounds for their inadmissibility in 2015 no longer apply." Appellants' Br. at 11-12. However, the language of the statue on its face defeats this

---

[7] Section 1252(e) also contemplates generalized challenges to the legality or constitutionality of section 1225(b), or regulations implementing section 1225(b), 8 U.S.C. § 1252(e)(3)(A)–(B), but such challenges had to be brought in the District of Columbia within 60 days of implementation of the challenged law. _Castro_, 835 F.3d at 427. Additionally, the expedited removal scheme has already been upheld against such a facial challenge to its constitutionality. _See AILA v. Reno_, 18 F. Supp. 2d 38, 60 (D.D.C. 1998), _aff'd_, 199 F.3d 1352 (D.C. Cir. 2000).

argument: review under 8 U.S.C. § 1252(e)(2)(B) "shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id.* at § 1252(e)(5) (emphasis added). This provision unambiguously prohibits the Court from entertaining review of whether Plaintiffs have as a factual matter been ordered removed on the theory that they are no longer "actually inadmissible" or should be entitled to "relief from removal" due to the collateral SIJ determination. *See id.* § 1252(e)(2)(B), (5). Rather, as this Court has explained, review under section 1252(e)(2)(B) "should only be for whether an immigration officer issued that piece of paper and whether the Petitioner is the same person referred to in that order." *Castro*, 835 F.3d at 431 (internal quotation omitted). As this Court noted in *Castro,* "the majority of courts that have addressed the scope of judicial review under § 1252 in the expedited removal context" have reached the same conclusion, *id.* (collecting cases), and expressly declined to follow the reasoning of the only court of appeals to reach an arguably different conclusion. *See id.* at 432 (criticizing *Smith*, 741 F.3d 1016, which construed a claim challenging customs officer's statutory authority to issue an expedited removal order as cognizable under section 1252(e)(2)(B), on the basis that *Smith* both ultimately rejected alien's theory and only assumed *hypothetical* jurisdiction under section 1252(e)(2)(B), a disfavored approach).[8]

---

[8] Appellants' citation to *Kabenga v. Holder*, 76 F. Supp. 3d 480, 485 n.30 (S.D.N.Y.

Because of the unequivocal dictate of the statute, 8 U.S.C. § 1252(e)(4), and this Court's recent and thorough explanation that section 1252(e)(2)(B) explicitly prohibits exactly the type of disguised challenge to admissibility or removability Appellants assert, *see Castro*, 835 F.3d at 431 ("Petitioners are attempting to create ambiguity where none exists."), there is no basis to find ambiguity in the limited scope of section 1252(e)(2)(B), which excludes Appellants' claim. Accordingly, there is no basis to invoke the canon of constitutional avoidance to read section 1252(e)(2)(B) more broadly (and essentially ignore section 1252(e)(4)), as Appellants request, because that canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Clark v. Martinez*, 543 U.S. 371, 385 (2005). The absence of such ambiguity means the canon is inapplicable here.

Thus, Appellants' arguments attempting to employ their SIJ classification as a shield against execution of their pre-existing and final expedited removal orders clearly arise from and relate to those orders, but their challenges do not fall within the scope

---

2015), is both in vain, as an out-of-circuit district case could not override this Court's contrary pronouncement in *Castro*, but also wholly off base. *Kabenga* dealt with an alien who claimed lawful permanent resident status as a defense against expedited removal, *see* 8 U.S.C. § 1252(e)(2)(C), not an alien attempting to claim such order was never issued under section 1252(e)(2)(B). 76 F. Supp. at 484. Moreover, *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457 (W.D. Tex. 2011), does not indicate that a court has jurisdiction to determine whether any immigration status entitles an alien to relief from expedited removal, but merely affirmed that the court's jurisdiction on habeas review of an expedited removal order was limited to the three narrow issues in section 1252(e)(2). 823 F. Supp. 2d at 463.

of permissible review under section 1252(e). *See* 8 U.S.C. § 1252(a)(2)(A)(i)–(iv); 8 U.S.C. § 1252(e)(1)–(5). Thus, the Court lacks jurisdiction over Appellants claims and to the extent it did so, the district court erroneously determined that it had authority to review Appellants' challenges under section 1252(e)(2).

Finally, assuming the Court should find merit in any of Appellants' claims, the INA is unequivocal that the only remedy a federal court may order upon determining that an alien is not properly subject to an expedited removal order is to place that alien in full removal proceedings. Section 1252(e) provides that where the Court determines that an alien subject to a final order of expedited removal has established that he meets one of the criteria under 8 U.S.C. § 1252(e)(2) such that he is not properly subject to expedited removal, "the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with [8 U.S.C. §] 1229a[.]" 8 U.S.C. § 1252(e)(4)(A)–(B). Thus, this Court and the district court lack statutory authorization in any event to enjoin Appellants' removal and ordering their release from detention.

However, even assuming arguendo that section 1252(e)(2) could be read to provide jurisdiction to review of whether Appellants' argument premised on 8 U.S.C. § 1255(h) that they are no longer inadmissible, notwithstanding the fact that 8 U.S.C. § 1252(e)(5) provides that no such review may occur, Appellants' claims lack any merit and cannot serve as the basis for any injunction.

2. *Count I is Based on a Legally Flawed Premise Regarding the Effect of SIJ Classification.*

Appellants' contention that execution of their final orders of expedited removal would violate the INA is wholly without merit. This flawed argument rests on an incorrect reading of 8 U.S.C. § 1255, the statute that delineates the procedures for adjustment of status.[9] Section 1255(h) states:

> In applying *this section* to a special immigrant (1) such an immigrant shall be *deemed, for purposes of subsection (a),* to have been paroled into the United States; and (2) in determining the alien's admissibility as an immigrant— (A) paragraphs (4), (5)(A), (6)(A), (6)(C), (6)(D), (7)(A), and (9)(B) of section 1182(a) of this title shall not apply . . . .

(emphasis added). Aliens with SIJ classification may apply for LPR status under 8 U.S.C. § 1255(a) (the referenced "subsection (a)"), subject to the Attorney General's *discretionary* decision to both waive any applicable inadmissibility grounds, *id.* § 1255(h)(2), and to grant such status, *id.* § 1255(a), so long as they are otherwise deemed eligible.

That such individuals are "*deemed* paroled" into the country for the specific and limited purpose of applying for a discretionary benefit to adjust to LPR status from

---

[9] "Historically, 'immigrant status was predicated upon the issuance of an immigrant visa, which could be obtained only at U.S. consular offices abroad.' With the enactment of 8 U.S.C. § 1255, however, Congress 'authorized a process—"adjustment of status"—whereby certain aliens physically present in the United States could seek lawful permanent resident status without having to depart this country.'" *Malik v. Attorney Gen. of U.S.*, 693 F.3d 3, 257 (3d Cir. 2011) (quoting *Landin-Molina v. Holder*, 580 F.3d 913, 915–16 (9th Cir. 2009)).

within the United States—as opposed to the general route of going through consular processing for such status from abroad—and that certain bars of inadmissibility do not apply for those limited purposes, does not and cannot be taken out of its context and contorted to stand for the proposition that SIJ-classified individuals can no longer be removed.[10] Dist. Ct. Order, A-13 ("This distortion of the law is based on Plaintiffs' decision to ignore the INA's distinction between being "paroled" and being "deemed paroled"; the latter is a legal fiction created only to allow DHS to determine whether an alien is eligible for an immigrant visa *under § 1255a*.") (emphasis added). *See also Garcia v. Holder*, 659 F.3d 1261, 1268 (9th Cir. 2011). § 1255(h) does not cancel a final order of removal or an underlying basis of inadmissibility or removability, as Appellants would have it, for multiple reasons.

As an initial matter, Section 1255(h)(2) would only be applied to the minor Appellants once a visa is actually available to them, and such is not the case here. As the relevant regulations explain,

> An alien is ineligible for the benefits of [adjustment of status, provided in 8 U.S.C. § 1255] unless an immigrant visa is immediately available to him or her at the time the application is filed. If the applicant is a preference alien, the current Department of State Bureau of Consular Affairs Visa Bulletin will be consulted to determine whether an immigrant visa is immediately available. A preference immigrant visa is considered available for accepting and processing if the applicant has a

---

[10] Indeed, the INA specifically clarifies that "[n]othing in [section 1255(h)] or 8 U.S.C. § 1101(a)(27)(J) of [8 U.S.C.] shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant status described in such section." 8 U.S.C. § 1255(h).

priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current).

8 C.F.R. § 245.1(g)(1) (emphasis added). Here, the State Department is, as of May 2017, only adjudicating immigrant visa applications in Plaintiff's appropriate visa class and geographic area —the fourth employment-based preference—with a priority date from *July 2015* due to the fact that such immigrant visas are subject to an annual cap and are currently oversubscribed.[11] Decl. of Peter Rosenstock ¶ 15, A-211. As of the July 2017 bulletin, that date is August 15, 2015. *See* Dep't of State, Visa Bulletin for May 2017, https://travel.state.gov/content/visas/en/law-and-policy/bulletin/2017/visa-bulletin-for-july-2017.htm (last accessed July 14, 2017); *see also, e.g.*, *Zhao Xin Zhu v. Attorney Gen. of U.S.*, 293 Fed. App'x 184, 186 (3d Cir. 2008) (explaining that lack of an immediately available visa precludes an individual from being able to apply for adjustment of status).

---

[11] Congress has established limits on the number of employment-based preference immigrant visas. *See* 8 U.S.C. § 1151 (setting a worldwide limit); 8 U.S.C. § 1152 (setting a per-country limit); 8 U.S.C. § 1151(a)(2) (setting a per-quarter limit for the first three quarters of any fiscal year). Congress further provided that employment based visas in the fourth preference category, which includes immigrant visas for those classified as Special Immigrant Juveniles, is not to exceed 7.1 percent of the worldwide limit. 8 U.S.C. § 1153(b)(4). When the demand is higher than the supply of visas for a given year in any given category or country, a visa queue (waiting list or backlog) forms. The priority date is used to determine an immigrant's place in the visa queue. 8 C.F.R. § 245.1(g)(1). The priority date for SIJ recipients is the date that USCIS accepts their SIJ petition for processing. 8 C.F.R. § 245.1(g)(2). SIJ recipients from El Salvador, Honduras, and Guatemala are currently in a visa queue.

Further, even if Appellants were not in expedited removal[12] but rather in removal proceedings under 8 U.S.C. § 1229a, SIJ classification would not cancel out a finding of removability—which includes inadmissibility—in such proceedings.[13] *See* 8 U.S.C. § 1229a(e)(2). Appellants' contention to the contrary is unsupported; their reliance on *Garcia*, 659 F.3d at 1271, is misplaced. The Ninth Circuit's decision in *Garcia* does not stand for the proposition that an alien who obtained SIJ classification is no longer inadmissible. Rather, the decision recognized that a person in removal proceedings under 8 U.S.C. § 1229a is still inadmissible even if they obtained SIJ classification. *Garcia* examined the ability of SIJ-classified individuals to apply for cancellation of removal, which can only be sought *after* having been found inadmissible.[14] *See id.*; *see also, e.g.*, *Luis Perez*, : A200 687 958 - TAC, 2013 WL 5872160,

---

[12] As noted earlier, Appellants are subject to final orders of expedited removal, which may *only* be subject to an as-applied challenge on three narrow grounds. 8 U.S.C. § 1252(e)(2).

[13] In removal proceedings under 8 U.S.C. § 1229a, once an individual is found to be removable, she may *then* try to apply for relief from removal, which can include cancellation of removal and adjustment of status. *See* 8 U.S.C. § 1229b. Such relief from removal does not alter the initial removability finding but rather allows the IJ to grant certain individuals relief, despite being removable, if they establish eligibility for this relief.

[14] *Garcia* is further inapplicable because it addressed the very limited question of whether the "parole" mentioned in 8 U.S.C. § 1255(h) for SIJ recipients qualified as "an admission in any status" for purposes of meeting the seven years continuous physical presence requirement under 8 U.S.C. § 1229b(a)(2), which has been construed as being broader than a legal admission. *Id.* at 1267–68.

at *1 (DCBABR Oct. 3, 2013) ("[A]n immigrant who has been granted status is considered to have been paroled into the United States for purposes of adjusting status under section 245(a) of the Act. See Section 245(h)(1) of the Act. 8 U.S.C. § 1255(a)]. But neither section 245(h) 8 U.S.C. § 1255(h)], nor *Garcia v. Holder*, *supra*, altered the respondent's admissibility for purposes of removal proceedings.").

Indeed, even were a visa number available, adjustment of status is never guaranteed, and the Third Circuit has affirmed that lack of an immediately available visa for the purposes of adjustment of status is an appropriate reason to deny such relief from removal, as well as a continuance to apply for such relief.[15] *Singh v. Attorney Gen. of U.S.*, 399 F. App'x 769, 773 (3d Cir. 2010); *accord Luevano v. Holder*, 660 F.3d 1207, 1215 (10th Cir. 2011) ("Although the agency cases permit, and may even

---

Further, unlike Appellants here, who have never held any legal status in the United States, the petitioner in *Garcia* was a lawful permanent resident who was placed in removal proceedings under 8 U.S.C. § 1229a due to a criminal conviction, 659 F.3d. at 1264, and was seeking cancellation of removal under 8 U.S.C.§ 1229b, a remedy available only to LPRs. The other extra-circuit district court cases cited by Appellants for this proposition, *see* ECF 44, at 13, impermissibly extend the scope of Section 1255(h) and are further distinguishable because they analyzed statutes that specifically conferred benefits to those who were paroled; here, the expedited statute regime does not permit review of expedited removal orders, or negation of such orders, for those who are paroled in, let alone "deemed paroled" for the purposes of adjustment of status.

[15] That the Board of Immigration Appeals has, in certain instances, counseled IJs to administratively close or continue removal proceedings under § 1229a for SIJ classified individuals as matter of "general practice," *see* Appellants' Br. at 27 n.15, does not create a legal entitlement for SIJ classified individuals in expedited removal to have their removal orders rescinded.

require, an IJ to continue proceedings in order to await mere processing of a properly filed visa petition with a current priority date, there is no agency or court precedent for requiring an IJ to grant an indefinite continuance so that a petitioner may remain in this country while awaiting eligibility for adjustment of status."); *Chacku v. U.S. Atty. Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008) (same).

Accordingly, merely obtaining an immigration classification permitting the alien to file an application to adjust status does not mean that adjustment of status will necessarily occur, because the agency "would still have to determine whether to confer LPR status." *Ngongo v. Ashcroft*, 397 F.3d 821, 823 (9th Cir. 2005). Similarly, "the filing of an application for adjustment of status does not confer any change in status . . . ." *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1103 (9th Cir. 2011). Appellants' argument to the contrary turns the application process on its head: it would be "illogical to conclude that application for a change of status. If that were the case, the government would never have to approve an application—a mere filing would be sufficient." *United States v. Ochoa-Colchado*, 521 F.3d 1292 (10th Cir. 2010); *accord Alcantar*, 645 F.3d at 1103 ("the submission of an application does not connote that the alien's immigration status has changed"); *United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006) (same).

Nor does the mere grant of SIJ classification or the filing of an application to adjust status confer any protection from removal. Adjustment of status is a discretionary determination. *See* 8 U.S.C. § 1255(a); *Mudric v. Att'y Gen.*, 469 F.3d 94,

98–99 (3d Cir. 2006). Aliens have no entitlement to adjustment of status merely by obtaining SIJ classification or by filing an adjustment application. *See, e.g., Mudric*, 469 F.3d at 99. Indeed, as the Sixth Circuit explained:

> Granting *SIJ status does not, in itself, restrain or compel the government with respect to deportation.* It merely makes him eligible for permanent resident status according to the INS's own rules. Furthermore, attaining SIJ status would only entitle [the alien] to apply for permanent status— the actual grant is both discretionary and conditioned.

*Gao*, 185 F.3d at 554–55 (emphasis added) (citing 8 U.S.C. § 1255(a)); *see M.B. v. Quarantillo*, 301 F.3d 109, 114 (3d Cir. 2002) (citing *Gao* with approval). Appellants' SIJ classification thus does not alter the Government's authority to execute their expedited removal orders. Thus, it cannot be said that the minor Appellants' SIJ classification voids or negates the previously issued finding of inadmissibility that forms the basis for her removal order.

In short, eligibility for exceptions to certain grounds of inadmissibility that would be determined at some future date when applying for a discretionary immigration benefit does not negate the validity of a prior-entered final order of expedited removal, and nothing in the INA states otherwise.[16]

---

[16] Further, 8 U.S.C. § 1252(e)(5) plainly states that "[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be *no review* of whether the alien is actually inadmissible or entitled to any relief from removal." Therefore, even if Appellants' claims were properly brought under 8 U.S.C. § 1252(e)(2)(B), the Court is clearly precluded from

**B.    Appellants' Procedural Due Process Claim Fails.**

In Count Three, Appellants argue that Defendants' implementation of SIJ classification "conflict[s] with the statutory rights and procedure directed by Congress" and, thus, that "Defendants['] removal of Appellants and those similarly situated would violate the procedural due process guarantees of the Fifth Amendment." ECF 1 ¶ 150–51. However, Appellants never raised this claim as a basis for their application for a temporary restraining order or responded to Appellees' arguments on this claim in their reply brief in support of their request for emergency relief. *See* A-53–158, Motion for Temporary Restraining Order; A-212–342, Pls.' Reply in Support of Request for Emergency Brief. Nor did the District Court review Appellants' due process claim. Dist. Ct. Order, A-4–A-17. Therefore, this argument should be considered waived on appeal. *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) ("Generally, failure to raise an issue in the District Court results in its waiver on appeal."); *E. Adhesives, Inc. v. Scapa N. Am., Inc.*, 305 F. App'x 33, 34 (3d Cir. 2008) ("Because [the appellant] did not raise these issues in the District Court and because they were not part of the District Court's holding, they are waived . . . .").

In any event, for aliens like Appellants, their apprehension shortly after "surreptitious entry" renders them on the threshold of entry seeking admission at the border for constitutional purposes. *See Castro*, 835 at F.3d 445–46. For such aliens,

ruling on whether Appellants are actually inadmissible or entitled to any relief from removal.

"[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (cited with approval in *Castro*, 835 F.3d at 449); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."); *see also supra*. Therefore, Appellants cannot assert any procedural due process rights related to their admission to this country. "And since the issues that [Plaintiff and her mother] seek to challenge all stem from the Executive's decision to remove them from the country, they cannot invoke the Constitution . . . in an effort to force judicial review beyond what Congress has already granted them." *Castro*, 835 F.3d at 445–46. This proposition bars Appellants' claims for relief from removal *or* expedited removal on the basis of the minor Appellants' SIJ classification.

Appellants' attempt to skirt *Castro*'s holding is unavailing. They argue that by virtue of the minor Appellants' SIJ classification and their time in immigration detention while they unsuccessfully challenged the validity of their expedited removal orders, they have "developed substantial connections with this country," thus somehow taking them out of the legal framework for aliens seeking initial admission into the United States. Appellants are incorrect. SIJ classification does *not* constitute admission into the United States, or, indeed, any sort of immigration classification. Dist. Ct. Order, A-7 ("Approval of an SIJ petition 'does not in itself grant any immigration classification . . . .'") (quoting Notice of Approval for SIJ Classification).

Nor can admission be granted on the basis of an application, or intent to file an application, for such classification. 8 U.S.C. § 1255(h) ("Nothing in [section 1255(h)] or 8 U.S.C. § 1101(a)(27)(J) of [8 U.S.C.] shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant classification described in such section."). Further, Appellees reiterate that being "deemed paroled" for the purposes of an adjustment of classification application does not mean being actually paroled into the country under 8 U.S.C. § 1182(d)(5). *See supra* Section I.A.

Finally, Appellants' attempt to classify their time in immigration detention while seeking to overturn their validly-issued final orders of expedited removals in clear contravention of 8 U.S.C. § 1252 and the decisions reached by every court to consider their claims as being "domicile[d] in Pennsylvania for over a year and a half" for the purposes of establishing "substantial connections with this country" is unsupported by law and must be rejected. Appellants have been, and continue to be, aliens seeking initial admission into the United States, and neither their "brief entrance into the country prior to being apprehended for removal" nor their time in immigration detention after being apprehended, take them out of that classification. *Castro*, 835 F.3d at 448–49. Indeed, their argument that time spent in the United States in detention (including while "deemed paroled" for adjustment purposes following grant of SIJ classification) ignores a long-standing principle of law, the "entry fiction." While aliens seeking admission into the United States may be

physically permitted to remain within its borders, either in detention or under parole, pending a determination of admissibility, "'such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.'" *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (quoting *Gisbert v. Attorney General*, 988 F.2d 1437, 1440 (5th Cir. 1993)); *see Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) (excludable aliens permitted into the country under parole have the same rights as those held at the border); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925). This principle was recently reaffirmed by this Court in *Castro*, 835 F.3d at 448 (explaining that Court's adoption of "entry fiction" has the effect of "deny[ing] due process rights to aliens even though they are unquestionably within the territorial jurisdiction of the United States"). Appellants' time in the United States while in immigration proceedings and awaiting removal has no effect on their degree of due process protection which, as aliens apprehended shortly after surreptitious entry, entitles them to no further process than that already provided for in statute. This Appellants have exhausted.

### C. Appellants Point to No Actual New Administrative Rule or Revocation And Cannot Sustain Their APA Violation Claim.

Appellants' claim that Defendants' attempt to execute their lawfully issued expedited removal orders amounts to a new legislative rule that required, but failed to undergo, notice-and-comment rulemaking is demonstrably meritless. Appellants' attempt to recast the execution of removal orders for aliens who have established no

relief from removal as a new rule or "revocation" of SIJ status is a red herring that flatly misunderstands that SIJ classification does not by itself confer relief from removal or a right to remain indefinitely in the United States. Moreover, Appellants point to no final agency determination to charge as arbitrary and capricious, and cannot show that their expedited removal orders are arbitrary and capricious.

First, there is no new rule or policy at issue. Appellants can point to no promulgation directing immigration authorities to execute orders of expedited removal against SIJ-classified aliens specifically because none exists, as none is necessary. Appellants provide no basis for inferring that SIJ classification has any legal ramification for DHS officers operating under their general duty to remove aliens who have duly received final orders of expedited removal, exhausted all possible review, and do not have one of the specifically enumerated statuses potentially nullifying their expedited removal orders. *See* 8 U.S.C. § 1252(e)(2)(C) (providing a mechanism for aliens who are lawful permanent residents, refugees, or recipients of asylum to challenge their expedited removal orders).[17]

Nor does the mere grant of SIJ classification (or the filing of an application to adjust classification on its basis) confer any protection against removal. "Granting [the

---

[17] Even if there were such a policy, individual claims arising from removal orders, as Appellants allege, are not reviewable under the APA. *See* 8 U.S.C. 1252(a)(2)(A), (e). A systemic challenge to expedited-removal policies, as Appellants' claim would amount to be if the rule or policy they describe existed, which it does not, may only be brought in the District of Columbia. *See* 8 U.S.C. § 1252(e)(3).

alien] SIJ status does not, in itself, restrain or compel the government with respect to deportation." *Gao*, 185 F.3d at 554–55 (emphasis added) (citing 8 U.S.C. § 1255(a)); *see M.B. v. Quarantillo*, 301 F.3d 109, 114 (3d Cir. 2002) (citing *Gao*, 185 F.3d at 556-57, with approval). Plaintiffs' receipt of SIJ classification thus does not alter the Government's authority to execute their expedited removal orders. And nothing in section 1255(h), "a legal fiction created only to allow DHS to determine whether an alien is eligible for an immigrant visa under § 1255(a)" if and when an alien is otherwise eligible to apply to adjust status, indicates otherwise. *See, e.g.*, *In re Luis Perez*, 2013 WL 5872160 (BIA 2013) (explaining that operation of section 1225(h) legal fiction does not "alter[] the respondent's admissibility for purposes of removal proceedings").

Thus, Appellants misunderstand the legal effect of SIJ status when they claim both that the DHS must revoke it in order to be able to remove SIJ recipients, and/or that DHS must adopt a new rule permitting the removal of persons with SIJ status. No such revocation is necessary because SIJ classification provides a platform for an alien to apply for adjustment of status but does not alone provide any defense to removal for aliens who have otherwise been ordered removed. *See Gao*, 185 F.3d at 554–55; M.B., 301 F.3d at 114.

Even if there was rule or policy directing the removal of SIJ recipients, such directive would not be subject to formal rulemaking requirements under the APA. "The notice-and-comment requirements apply, moreover, only to so-called

'legislative' or 'substantive' rules; they do not apply to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993) (quoting 5 U.S.C. § 553(b)); *see generally Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203-04 (2015) (describing the difference between legislative and interpretive rules).  Any such rule would not alter Appellants' substantive rights: as SIJ classification does not confer any right to admission or relief from removal, *see* 8 U.S.C. § 1255(h); *Gao*, 185 F.3d at 554–55—and while there is no "right" to apply to adjust status, a discretionary benefit, such application based on SIJ classification may still be pursued even after removal. Appellants with SIJ classification may seek to obtain an immigrant visa overseas through consular processing with the Department of State under 8 U.S.C. §§ 1201 and 1204, when their priority date is current, 22 C.F.R. § 42.32(d)(6), after they are removed. Appellants may request that USCIS send the approved petition to the Department of State's National Visa Center by filing Form I-824, Application for Action on Approved Application or Petition, to initiate the visa application process. *See* "Next Steps—Fees and Application," U.S. Dep't of State Bureau of Consular Affairs, https://travel.state.gov/content/visas/en/immigrate/employment.html#fourth (last visited May 23, 2017); 58 Fed. Reg. 42843–01, 482844 ("Aliens who are classifiable as special immigrants may apply for immigrant visa issuance abroad or adjustment of status to that of a lawful permanent resident within the United States.").

And, the agency's internal interpretation of the statutes governing its conduct, and policies and practices thereunder—as any (nonexistent) policy directing officers to continue the removal of aliens subject to section 1225(b)(1) who later obtain SIJ classification would be—do not require notice and comment under the APA. See *Lincoln,* 508 U.S. at 196. Moreover, to the extent that the agency's decision to pursue Appellants' removal actually arose in their administrative adjudications—i.e., their credible fear proceedings under section 1225(b)(1)—such determinations do not announce legislative rules subject to notice and comment. *See SBC Inc. v. Fed. Commc'ns Comm'n*, 414 F.3d 486, 498 (3d Cir. 2005).

Additionally, Appellants claim that the (nonexistent) new rule permitting the (currently default) expedited removal of aliens lacking entry authorization who cannot show a credible fear of persecution or torture and cannot satisfy the section 1252(e)(2) criteria, be they those with SIJ classification or any other categories of aliens, is "arbitrary and capricious in substance." Appellants' Br. at 33.

At the outset, the arbitrary and capricious standard under section 706(2) primarily "focuses a court on the agency's process of reasoning" in the context of an administrative adjudication resulting in a final agency decision. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006). However, USCIS has not yet adjudicated Appellants' Form I-485 applications, and thus there is no final agency action to challenge. The APA only permits review of agency determinations that represent "final agency action." 5 U.S.C. § 704; *Chehazeh v. Attorney Gen. of U.S.*, 666

F.3d 118, 127 (3d Cir. 2012). A final agency action fully resolves the claim on the merits, *see id.*, which is not the case with Appellants' pending Form I-485 applications. Appellants in fact concede the absence of a final agency action under currently existing law when they argue that this rule would operate "perverse[ly]" here because Appellants' removal will, they erroneously claim, prevent adjudication of Form I-485 applications. Appellants' Br. at 33-34. This claim is untrue as an immigrant visa can be pursued from abroad, as explained *supra*.

To the extent Appellants could even challenge the (nonexistent) new rule or policy itself as arbitrary or capricious, they cannot prevail on such a claim. To determine whether an agency acted arbitrarily and capriciously, courts look to whether the agency relied on factors outside those intended by Congress for consideration, completely failed to consider an important aspect of the problem, or provided an explanation contrary to, or implausible in light of, the evidence. *Id.* (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Reversal is appropriate only where the administrative action is irrational based on relevant factors. *Pennsylvania Dep't of Pub. Welfare v. United States Dep't of Health and Human Servs.*, 101 F.3d 939, 943 (3d Cir. 1996).

Appellants argue that the "new rule" is arbitrary and capricious because "[t]here is no reason why the notice and hearing provisions apply when USCIS wishes to revoke SIJ status for the reasons set forth in 8 C.F.R. § 205.1 [providing for the automatic revocation of SIJ petitions], but not when an expedited removal order

exists that the USCIS knew of when it granted SIJ status." Appellants' Br. at 33. Their logic fails because, as explained, no revocation of SIJ classification occurs when DHS executes an expedited removal order because an SIJ alien may still apply for an immigrant visa from abroad and SIJ classification confers no protection against removal. *See Gao*, 185 F.3d at 554–55. Thus, the revocation regulation need not address the execution of such order, which is not a revocation.

Further, Appellants fail to show how, in their credible fear proceedings, the only agency adjudicatory proceeding connected to their challenge to their removal, Defendants acted irrationally for any of the cognizable reasons enumerated by the Supreme Court for section 706(2) review. *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43. More critically, such a challenge to the agency's reasoning in the credible fear process or to substantive or procedural aspects of the determinations that aliens such as Appellants are inadmissible and subject to expedited removal is categorically barred as to Appellants' individual proceedings. *See* 8 U.S.C. §§ 1252(a)(2)(B)(i), 1252(e)(2), (e)(5); *Castro*, 835 F.3d at 429–31.

Thus, neither Appellants' substantive nor procedural theories under the APA have any likelihood of success on the merits.

## II. Appellants Fail to Demonstrate Irreparable Harm.

Even if Appellants established likelihood of success on the merits of their claims, they fail to establish that they would suffer irreparable harm in the absence of the requested relief. Appellants cursorily identify two types of harm, neither of which

can support a finding of irreparable harm for the purposes of a preliminary injunction in this case.

First, contrary to Appellants' mischaracterization of the proceedings below, the District Court did not "recognize[]" but merely "accept[ed], arguendo" that they face danger upon return to Central America. These claims have already been thoroughly vetted through the credible fear screening process established by Congress for just such purpose, and found to lack merit. *See Castro*, 835 F.3d at 428. Appellants' attempt to force this Court to second guess those credible fear determinations is jurisdictionally barred and cannot serve as the basis for finding irreparable harm when USCIS, an immigration judge, the District Court, the Third Circuit, and the Supreme Court have all rejected any claim of entitlement to review such claims. *Id.* at 430–32. Simply put, because Appellants' challenges to the finding they lack credible fear of return were rejected in *Castro*, such claims are no longer cognizable under the irreparable harm analysis. *See Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) ("To show irreparable harm, the party seeking injunctive relief must at least demonstrate that there exists some *cognizable* danger of recurrent violation of its *legal rights*." (emphasis added) (internal quotation omitted)

Second, Appellants appear now to concede, Appellants' Br. at 34, that their removal does not automatically foreclose them from applying for an immigrant visa— which would turn into lawful permanent resident status upon admission to the United

States[18]—from abroad through consular processing. *See* 58 Fed. Reg. 42843–01, 482844.[19] For this reason, Appellants have no basis to continue to assert that removal would "eviscerate" their SIJ classification, which would still serve its role as a conceptual platform permitting them to apply for lawful permanent residence. However, they now claim that alleged additional time and difficulty from applying while abroad constitutes irreparable harm. Appellants' Br. at 34. Aliens normally apply while abroad for visas at U.S. consulates, *see, e.g., Scialabba*, 134 S. Ct. at 2198-99 (describing process of applying for and interviewing at consulate for visa)— Appellants point to nothing to suggest that they would suffer unusual and atypical difficulties engaging the same process. And even if there was more than speculation to support their allegations of increased administrative difficulty, that alone does not rise to the level of imminent irreparable injury justifying preliminary injunctive relief. *See Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence

---

[18] *See Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2227 & n.1 (2014) (explaining the two routes to lawful permanent residence and noting the fact that "the criteria for securing adjustment of status and obtaining an immigrant visa are materially identical").

[19] Further, the mere assertion that such a route may be more difficult than simply adjusting status from within the United States does not render the asserted harm "irreparable." Appellants provided no evidence that obtaining an immigrant visa from abroad was an inadequate remedy, *see Anderson*, 125 F.3d at 163-64, and their bare assertions to the contrary are unsupported and speculative. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

of a stay, are not enough'" to rise to the level of irreparable harm. (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

Appellants have therefore failed to make the "clear showing" of irreparable harm based on any other cognizable basis as required to establish this element of the preliminary injunction test. *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 325 (E.D. Pa. 2012) ("[E]stablishing the risk of irreparable harm is not enough to support a preliminary injunction. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'") (quoting *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

## III. The Public and Governmental Interests Weigh Against Injunctive Relief.

Even assuming Appellants were able to show a likelihood of success and irreparable injury, analysis of a preliminary injunctive request for stay of removal "calls for assessing the harm to the opposing party and weighing the public interest," factors which "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As the Supreme Court has explained, the fact that only one or a few removals are at issue does not render the Government's interest in any particular removal "negligible." *Id.* Rather, "[t]here is always a public interest in prompt execution of removal orders." *Id.* at 436. The rationale is all the more compelling here, both because the expedited removal process that generated Appellants' removal orders was designed by Congress to be even more "streamlined" than the 8 U.S.C. § 1229a removal proceedings discussed in *Nken*, *see* H.R. Rep. No. 104-469, at 117-18,

and because the fact that Appellants' removability has now been sustained at all possible levels of appeal means the "public interest in preventing aliens from being wrongfully removed" is not present here and provides no countervailing weight. *See id.* "The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *Reno v. Arab-Am. Anti-discrimination Comm.*, 525 U.S. 471, 490 (1999)).

Indeed, *Nken* explained that the public interest even more strongly weighs in favor of prompt removal where the alien "substantially prolonged his stay by abusing the processes provided to him," such as where he "[p]ostpon[ed] justifiable deportation" hoping that "the alien's status will change—by, for example, marriage to an American citizen[.]" *Id.* at 436 (quoting *Arab-Am. Anti-discrimination Comm.*, 525 U.S. at 490). Here, Appellants have sought judicial review unequivocally barred by the INA—which every court to address their claims has held—which delayed their removal for over a year while they, like the alien hoping to marry into a green card, *id.*, sought to collaterally change their status through the SIJ process. Appellants' undisguised efforts to thwart Congressional intent by making an end run around the system it crafted to sort aliens with meritorious claims to admission from those lacking such claims further indicates that the public interest lies against the continued delay of Appellants' authorized and affirmed removal. *See id.*

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's opinion and deny Appellants' appeal.


//

//

Dated:  July 21, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Senior Litigation Counsel

/s/ Vinita B. Andrapalliyal
VINITA B. ANDRAPALLIYAL
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Tel:  (202) 598-8085
Fax:  (202) 305-7000
Vinita.b.andrapalliyal@usdoj.gov

/s/ Joseph A. Darrow
JOSEPH A. DARROW
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Tel:  (202) 598-2445
Fax:  (202) 305-7000
joseph.a.darrow@usdoj.gov

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains no more than 12,566 words, excluding those portions of the brief exempted. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font.

I further certify that the electronic version of this brief filed with the Court was virus checked on April 21, 2017 using the virus-check software provided by the Microsoft Windows operating system, and no virus was detected.

## CERTIFICATE OF MEMBERSHIP

I certify that I am a member in good standing of the bar of this Court.

## CERTIFICATE CONCERNING PAPER COPIES

I certify that the paper copies of the briefs filed with the Court are identical in all respects to the electronic version of the brief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

Dated: July 21, 2017

s/ Joseph A. Darrow
JOSEPH A. DARROW
Trial Attorney